**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| **METROPOLITAN DEVELOPMENT GROUP AT COOL SPRING, LLC,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: GJH-20-3237** |
| **COOL SPRING ROAD LLC** *et al.*, | * | |
| **Defendants.** | * | |
|  | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**MEMORANDUM OPINION**

Plaintiff Metropolitan Development Group at Cool Spring, LLC ("Metropolitan") filed suit against Defendants Cool Spring Road, LLC ("Cool Spring Road"), LL College Park LLC ("LL College Park"), Charles B. Boswell, Rebecca B. Swanston, and Libby Adelphi Road, LLC ("Libby Adelphi Road") (collectively "Defendants") seeking specific performance (Count I) and preliminary and permanent injunctive relief (Count III) and alleging breach of contract (Count II) arising out of an agreement to form a joint venture to develop a property for multi-unit residential use in Hyattsville, Maryland. ECF No. 1. Pending before the Court are a number of motions including Plaintiff's Motion for Summary Judgment, ECF No. 24, Defendants/Counter-Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 26, and Defendants/Counter-Plaintiffs' Motion for Summary Judgment on their Counterclaim, ECF No. 27. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Plaintiff's Motion for Summary Judgment, ECF No. 24, is denied, and Defendants/Counter-Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 26, is granted. Defendants/Counter-Plaintiffs' Motion for Summary Judgment on their Counterclaim, ECF No. 27, is also granted.

I.      **BACKGROUND**[1]

   **A. Factual Background**

Defendants/Counter-Plaintiffs, LL College Park, Charles B. Boswell, Rebecca B. Swanston, and Libby Adelphi ("Parcel Owners") are the owners of the Property at issue in this case: 17.3 acres of undeveloped land located adjacent to the University of Maryland, College Park Campus and near a planned station for the Purple Line, valued in excess of $1.4 million dollars. ECF No. 1 ¶¶ 4, 2; ECF No. 15 ¶¶ 2, 4 (Defendants' Answer to Complaint and Counterclaim); ECF No. 25-2 ¶ 2 (Lederberg Declaration). LL College Park and Libby Adelphi Road are both Maryland LLCs and all of their members are Maryland residents, and Charles B. Boswell and Rebecca B. Swanston are also Maryland residents. ECF No. 1 ¶¶ 14–16. In or about 2016, Metropolitan first approached Parcel Owens about developing the Property. ECF No. 19 ¶ 3 (Plaintiff's Answer to Defendants' Counterclaim). On September 8, 2016, a Metropolitan affiliate and Parcel Owners executed a Letter of Intent for the proposed joint venture. ECF No. 24-3 ¶ 8 (Chadwick Declaration); ECF No. 24-4 at 2[2] (Letter of Intent).

On or about August 15, 2017, Metropolitan's predecessor, Metropolitan Development Group, LC ("MDG"), entered into and executed the Joint Venture Formation Agreement (the "Agreement")[3] with Cool Spring LLC and Parcel Owners. ECF No. 1 ¶¶ 3, 17, 20; ECF No. 15 ¶ 3, 20; ECF No. 1-1 (Joint Venture Formation Agreement). On or about October 3, 2017, the Property was transferred to Defendant Cool Spring Road, LLC, which is owned by the Parcel

---

[1] These facts are either undisputed or viewed in the light most favorable to Plaintiff as the non-moving party.

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] The parties disagree about whether to refer to the Agreement as a "Joint Venture Formation Agreement," as do Defendants, *see* ECF No. 25 at 7, or a "Joint Venture Agreement," as does Plaintiff, *see* ECF No. 24-1 at 5. Such disagreement over the characterization of Agreement is not dispositive of the primary issue before the Court.

Owners, to facilitate the creation of a joint venture with Metropolitan. ECF No. 1-5 (Confirmatory Deed); ECF No. 25-2 ¶¶ 3, 13; ECF No. 1 ¶¶ 3, 30; ECF No. 15 ¶ 30. Cool Spring Road is a Maryland LLC, and all of its members are Maryland residents. ECF No. 1 ¶ 13, 29–30. On or about October 16, 2017, the parties entered into a First Amendment to the Joint Venture Formation Agreement (the "First Amendment). ECF No. 1-2 (First Amendment to Joint Venture Formation Agreement); ECF No. 1 ¶¶ 5, 23–24; ECF No. 15 ¶ 24. On November 15, 2017, the Parcel Owners transferred and assigned all of their interest in and to the Agreement to Cool Spring Road, LLC, which assumed all of the obligations and liabilities under the Agreement and agreed to be bound thereby. ECF No. 1-3 (the "Cool Spring Assignment"); ECF No. 1 ¶¶ 6, 25–26; ECF No. 15 ¶¶ 25–26. On or about June 25, 2019, MDG transferred and assigned all of its interest in and to the Agreement to Metropolitan and Metropolitan also assumed all of the obligations and liabilities under the Agreement and likewise agreed to be bound thereby. ECF No. 1-4 (the "Metropolitan Assignment"); ECF No. 1 ¶¶ 7, 27–28. Metropolitan is a Virginia LLC, and all of its members are Virginia residents. *Id.* ¶ 12.

The Recitals to the Agreement provide that the purpose of the Agreement is to "enter into a joint venture to develop the Project," and the Project is defined as "Metropolitan's intended development of the Property" to consist of no less than 120 "market-rate, multi-family rental units." ECF No. 1-1 at 2, 5. Clause C states that "[s]ubject to the satisfaction of certain conditions precedent to Closing . . . and Metropolitan's decision to seek the Land Use Approvals . . . Parcel Owners' LLC will (or will cause the Parcel Owners to) issue a membership interest in Parcel Owner's LLC to Metropolitan[.]" *Id.* at 2. Article 1 of the Agreement outlines "basic terms" of admission to include the following:

(e) <u>Effective Date</u>: The latest date of execution by a Parcel Owner, Parcel Owners' LLC, or Metropolitan, as indicated on the signature page.

(g) <u>Study Period</u>: The period ending sixty (60) days after the Effective Date.

(i) <u>Closing Date</u>: A business day designated by Metropolitan that shall be no later than the Outside Date. If Metropolitan does not notify Parcel Owners' LLC of the Closing Date on or before the Outside Date, then the Outside Date shall be the Closing Date.

(j) <u>Outside Date</u>: The date that is sixty (60) days after the earlier of (i) final, nonappealable issuance of Land Use Approvals (hereinafter defined), or (ii) the expiration of the Entitlement Period (hereinafter defined).

ECF No. 1-1 at 3.

Article 2.3 provides that "[f]ollowing the expiration of the Study Period, Metropolitan may elect to record a memorandum of option in the land records against the Property[.]" *Id.* at 4. Moreover, if Metropolitan "records such a memorandum, then Parcel Owners' LLC shall promptly execute and acknowledge the same, and Metropolitan shall deliver an executed release of such option to the Escrow Agent, which release shall be recorded if Metropolitan fails to obtain the Approvals during the Entitlement Period." *Id.*

Article 3 of the Agreement covers land use approvals, and Article 3.3(a) states, in part, the following: "The parties agree that, from and after the Effective Date, Metropolitan shall have the right to pursue and obtain the Land Use Approvals, and shall use its commercially reasonable efforts to pursue and obtain the Land Use Approvals." *Id.* at 5. Article 3.3(b) provides, in part, that:

> If (a) applicable Governmental Authorities do not issue Land Use Approvals prior to the expiration of the Entitlement Period (subject to any extensions described below) . . . in each case in Metropolitan's sole and absolute discretion, then Metropolitan may deliver written notice of such event or determination to Parcel Owners' LLC, whereupon (i) provided that Parcel Owners' LLC is not then in default under this Agreement, Metropolitan shall assign all of its right, title, and interest in and to any pending Land Use Applications, any issued Land Use Approvals, and any agreements between Metropolitan and the architects and engineers representing Metropolitan in the approval process (collectively, the "Pending Approvals") at no cost to Parcel Owners' LLC, (ii) this Agreement shall terminate, and (iii) the parties hereto shall be relieved of all further liability and obligation to each other, except with respect to those obligations that expressly survive the termination of this Agreement. Metropolitan shall provide Parcel

Owners' LLC with written notice of receipt of the Land Use Approvals promptly after the receipt thereof, it being acknowledged that the Land Use Approvals shall not become final until any applicable appeal periods have run.

*Id.* at 6. Article 3.4 allows the following:

If Metropolitan is not successful in obtaining the Land Use Approvals during the Entitlement Period, but Metropolitan has applied for and is diligently pursuing the Land Use Approvals . . . two (2) options to extend the Entitlement Period for periods of six (6) months each, which may be exercised by written notice given to Parcel Owners' LLC at any time prior to the expiration of the then-current Entitlement Period.

*Id.* On January 21, 2020, a representative for Metropolitan, Carlos G. Vazquez, wrote a letter to Defendant Cool Spring Road, LLC, proposing a second amendment to the Agreement that would extend the Entitlement Period by eighteen months. ECF No. 24-19 at 2 (Vazquez Declaration). Defendants did not agree to this proposed second amendment. ECF No. 25-2 ¶ 15. Then, in February and May of 2020, Metropolitan was granted its request of two six-month extensions of the Entitlement period. ECF No. 1-6 at 2 (February 18, 2020 Extension Letter); ECF No. 1-7 at 2 (May 15, 2020 Extension Letter); ECF No. 25-2 at 5 ¶ 16; ECF No. 1 ¶¶ 36–38. The May 15, 2020 Letter "confirm[ed] that the Entitlement Period shall expire on November 15, 2020," and the parties agreed that "there are no further options to extend the Entitlement Period pursuant to Section 3.4 of the Agreement." ECF No. 1-7 at 2; ECF No. 1 ¶ 39. Article 3.6(a) covers any potential buyouts of the Parcel Owners and stated that "[i]f Metropolitan successfully obtains the Land Use Approvals during the Entitlement Period (including any extensions thereof), it shall notify Parcel Owners' LLC of such fact[,]" and that promptly thereafter:

Parcel Owners and Metropolitan shall meet and determine which of the Parcel Owners wish to continue with the construction of the Project. Each Parcel Owner who does not wish to continue with the construction of the Project . . . and Metropolitan, and the Remaining Parcel Owners and Metropolitan shall be obligated to purchase, its interest in Parcel Owners' LLC for an amount . . . equal to the product of (i) the amount such Parcel Owner would be entitled to receive under the JV Agreement if Parcel Owners' LLC sold the Property for the Appraised Value[.]

5

*Id.* at 7.

Article 6 addresses the closing of "the consummation of the transactions contemplated" by the Agreement, and Article 6.2 states: "In addition to all other conditions set forth herein, the obligation of Parcel Owners' LLC to consummate the transactions contemplated hereunder shall be contingent upon the satisfaction of the conditions set forth in sub-paragraphs (a) through (d) of this Section 6.2[.]" *Id.* at 10. The conditions set forth in sub-paragraphs (a) through (d) are as follows:

(a) The other party's representations and warranties contained herein shall be true and correct as of the Effective Date and the Closing Date. For purposes of this clause (a), if a representation is made to knowledge, but the factual matter that is the subject of the representation is false notwithstanding any lack of knowledge or notice to the party making the representation, such event shall constitute a failure of this condition only, and not a default by Parcel Owners' LLC;

(b) As of the Closing Date, the other party shall have performed its obligations hereunder and all deliveries to be made at Closing have been tendered;

(c) There shall exist no actions, suits, arbitrations, claims, attachments, proceedings, assignments for the benefit of creditors, insolvency, bankruptcy, reorganization or other proceedings, pending or threatened against the other party that would materially and adversely affect the other party's ability to perform its obligations under this Agreement;

(d) There shall exist no pending or threatened action, suit or proceeding with respect to the other party before or by any court or administrative agency which seeks to restrain or prohibit, or to obtain damages or a discovery order with respect to, this Agreement or the consummation of the transactions contemplated hereby[.]

*Id.* at 10–11; ECF No. 1 ¶ 42. The parties agree that the closing date under the Agreement was on or before January 15, 2021. ECF No. 1 ¶ 40; ECF No. 25 at 20 n.10.

Article 10.4 provides that, "in all respects," the Agreement "be governed, construed, applied, and enforced in accordance with the law of the State of Maryland, exclusive of conflict of laws principles." ECF No. 1-1 at 17. And Article 10.9 provides:

[I] n the event a dispute arises between the parties regarding any of the terms of this Agreement, and either party is required to litigate the dispute or disputes as a plaintiff,

6

defendant or a third party, the party held in breach hereof agrees to pay all reasonable attorneys' fees and costs incurred by the prevailing party in litigating the dispute

*Id.*

Moreover, Exhibit B to the Agreement is the Amended Operating Agreement for Cool Spring Road, LLC, which was never executed by the parties, *id.* at 29–63, and attached as Exhibit A to the Amended Operating Agreement for Cool Spring Road is a document entitled "Members, Capital Funding Amount, and Percentages," which indicates that, if the Amended Operating Agreement were executed, Metropolitan would have received a 71% interest in the Joint Venture. *Id.* at 64.

According to the Declaration of Arthur J. Horne, Jr., submitted in support of Plaintiff's Motion for Summary Judgment, Plaintiff retained Horne to assist in pursuing and obtaining the Land Use Approvals beginning on September 22, 2016, and his efforts included "client communications, communications with Council Members to garner support for rezoning, communications with local and state bodies, participation in the New Purple Line study process and the submission of a proposed Countywide Map Amendment." ECF No. 24-13 ¶¶ 9, 13. The Horne Declaration acknowledges that Plaintiff "has not yet obtained Land Use Approvals for the Property[,]" which he says is "not at all unusual" given the "scale of the proposed development, the location of the Property, the typical resistance to any change by neighboring owners, the legislative nature of the zoning process, and the result of [Horne's] numerous meetings with Council Members." *Id.* ¶¶ 14–15. Horne attests that, in his professional opinion, "Metropolitan has undertaken commercially reasonable efforts to pursue and obtain the Land Use Approvals for the Property." *Id.* ¶ 49.

Plaintiff contends that it satisfied all conditions precedent as set forth in Article 6.2 of the agreement and that, as such, Defendants are required to close under Article 6, and that the

issuance of Land Use Approvals is not a condition precedent to closing under the Agreement. ECF No. 1 ¶¶ 43, 45 48. Defendants disagree, and on October 21, 2020, the duly authorized representative of Defendant Cool Spring Road and Parcel Owners sent written notice to Plaintiff that the Agreement would terminate on November 15, 2020 because the Land Use Approvals would not be issued prior to that date. ECF No. 1-8 at 2 (Agreement Termination Letter); ECF No. 1 ¶ 46–47. Plaintiff contends that, in seeking and pursuing rezoning approval for the property, it has expended substantial time, resources, and effort, including legal fees, overhead expenses, architectural, planning, and engineering costs, all of which exceed $75,000. *Id.* ¶ 50.

### B. Procedural Background

On November 6, 2020, Plaintiff filed the Complaint in this matter against Defendants, ECF No. 1. On December 29, 2020, Defendants answered the Complaint and filed a Counterclaim seeking declaratory relief with respect to the rights of the parties under the Agreement, ECF No. 15. On January 19, 2021, Plaintiff answered the Counterclaim, ECF No. 19. On April 13, 2021, Plaintiff filed the now pending Motion for Summary Judgment, ECF No. 24, and on May 3, 2021, Defendants opposed the Motion, ECF No. 25. Also, on May 3, Defendants filed a Cross-Motion for Summary Judgment on the Complaint, ECF No. 26, and filed a Motion for Summary Judgment on their Counterclaim, ECF No. 27. On May 17, 2021, Plaintiff filed a Reply to the Motion for Summary Judgment, ECF No. 28, and also filed a Notice of Opposition to Defendants' Cross Motion for Summary Judgment and Motion for Summary Judgment, stating that Defendants' summary judgment submissions violated Local Rule 105.2.c. and the Court's Scheduling Order, ECF No. 29. On May 28, 2021, Defendants filed a Reply to the Cross-Motion for Summary Judgment, ECF No. 30.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" Fed. R. Civ. P. 56(a); *see also Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23.

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only genuine if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Cross-motions for summary judgment require that the Court consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "The Court must deny

both motions if it finds a genuine issue of material fact, 'but if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment.'" *Wallace v. Paulos*, No. DKC 2008-0251, 2009 WL 3216622, at \*4 (D. Md. 2009) (citation omitted).

"The first step for a court asked to grant summary judgment based on a contract's interpretation is . . . to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *Wash. Metro Area Transit Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007). If the contract is unambiguous, the Court can interpret the contract as a matter of law. *Id*. If the contract is ambiguous, the court may examine extrinsic evidence of the parties' intent. *Id.* At that point, extrinsic evidence can either be dispositive as a matter of law or can leave genuine issues of material fact respecting the contract's proper interpretation. *Id.* In the latter case, summary judgment should be denied. *Id.* In sum, "summary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitely resolved by reference to extrinsic evidence." *Id.*

## III.   DISCUSSION

The parties have filed cross-motions for summary judgment. Plaintiff seeks summary judgment for specific performance and requests that this Court order Defendants to transfer a 71% membership interest in Cool Spring Road, LLC to Plaintiff. ECF No. 24-1. Defendants filed a Cross-Motion for Summary Judgment on the Complaint, *see* ECF No. 26. Defendants also seek summary judgment on their Counterclaim against Plaintiff and request declaratory relief. ECF No. 27. Plaintiff argues that it is entitled to summary judgment because, under the terms of the Agreement, obtaining Land Use Approvals was not a condition precedent for closing. *See* ECF No. 24-1 at 14. Defendants dispute Plaintiff's interpretation of the Agreement and the related

argument that there was no requirement for Plaintiff to actually obtain the Land Use Approvals, and further contend that it is entitled to summary judgment on the Complaint because Plaintiff failed to satisfy the condition precedent of obtaining the approvals. ECF No. 25 at 7–8; ECF No. 26 at 1–2.

### A.  The Interpretation of the Contract

Article 10.4 of the Agreement provides that, "in all respects," the Agreement is governed by Maryland law, and the parties both agree that Maryland law governs this case. ECF No. 1-1 at 17; ECF No. 25 at 22; ECF No. 24-1 at 14.

"Under Maryland law, '[t]he interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law.'" *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (quoting *Sy–Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 376 Md. 157, 829 A.2d 540, 544 (2003)). "The purpose of contract interpretation is to determine and effectuate the intent of the parties, and the primary source for identifying this intent is the language of the contract itself." *Id.* (internal citation omitted). "Contracts are interpreted as a whole, and the terms of the agreement are construed consistent with their usual and ordinary meaning, unless it is apparent that the parties ascribed a special or technical meaning to the words." *Id.* (internal quotations and citations omitted). "Because Maryland follows the objective law of contracts, the court must, as its first step, determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated." *Aronson & Co. v. Fetridge*, 181 Md. App. 650, 681, 957 A.2d 125, 143–44 (2008) (internal quotations and citations omitted). "Where the language of the contract is unambiguous, its plain meaning will be given effect. There is no need

for further construction." *Aetna Cas. & Sur. Co. v. Ins. Comm'r*, 293 Md. 409, 420, 445 A.2d 14 (1982).

"A contract is not ambiguous simply because, in litigation, the parties offer different meanings to the language. It is for the court, supposing itself to be that reasonably prudent person, to determine whether the language is susceptible of more than one meaning." *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank*, N.A., 400 Md. 718, 751, 929 A.2d 932, 952 (2007). "The determination of whether language is susceptible of more than one meaning includes a consideration of 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution[.]'" *Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358, 363 (1999) (quoting *Pacific Indem. v. Interstate Fire & Cas.*, 302 Md. 383, 388, 488 A.2d 486, 488 (1985)).

The dispositive issue in the present case is whether obtaining the Land Use Approvals during the Entitlement Period was required, as a condition precedent, to closing under the Agreement and Plaintiff's entitlement to the 71% interest in Cool Spring Road, LLC, the sole asset of which is the Property. Article 3.3(a) provides, in part, that: "Metropolitan shall have the right to pursue and obtain the Land Use Approvals, and shall use its commercially reasonable efforts to pursue and obtain the Land Use Approvals." ECF No. 1-1 at 5. Plaintiff argues that this language requires it "to use 'commercially reasonable efforts,'" which it argues it did, but that it "does not require [it] to obtain the Land Use Approvals, let alone within a particular time." ECF No. 24-1 at 16. Defendants assert that Article 3.3(a)'s language is clear and unambiguous and that "'[p]ursue and obtain' is not subject to multiple interpretations." ECF No. 25 at 24–25.

As the Maryland Court of Appeals has explained, "'[a]nd'" and "'or'" are both conjunctions used to link other words, phrases, or clauses. 'Or' has a disjunctive meaning while

'and' has a conjunctive meaning." *SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 642, 187 A.3d 686, 692 (2018) (quoting *The American Heritage Dictionary of the English Language* 1236 (4th ed. 2006) ("or" is a conjunction "[u]sed to indicate an alternative, usually only before the last term of a series [.]") and *id.* at 66 ("and" is a conjunction meaning "[t]ogether with or along with; in addition to; as well as[;u]sed to connect words, phrases, or clauses that have the same grammatical function in a construction.")) (alterations in original). It follows, then, that a reasonable person in the position of the parties at the time the Agreement was effectuated would have intended that Plaintiff had to use its commercially reasonable efforts to *both* pursue the Land Use Approvals and obtain them. *See Aronson & Co. v. Fetridge*, 181 Md. App. at 681.

Plaintiff's reading of this sentence in Article 3.3(a) is inconsistent with the character and purpose of the contract and the surrounding circumstances. *See Credible Behav. Health, Inc. v. Johnson*, 466 Md. 380, 398, 220 A.3d 303, 313 (2019) ("As a bedrock principle of contract interpretation, Maryland courts consistently strive to interpret contracts in accordance with common sense."). In this Agreement, specifically in the Recitals, the purpose of the parties in contracting is crystalized: "Parcel Owners' LLC and Metropolitan desire to enter into a joint venture to develop the Project," where the Project is "Metropolitan's intended development of the Property . . . provided that at all times the Project shall consist primarily of market-rate, multi-family rental units[,]" specifically no less than 120 rental units without the consent of Parcel Owners' LLC. ECF No 1-1 at 2, 5. And as Defendants aptly note, the Parcel Owners' property could only be developed in the manner outlined in the Agreement if the Land Use Approvals were actually obtained, *see* ECF No. 25 at 34, and not if Plaintiff merely used "commercially reasonable efforts," but did not succeed, ECF No. 24-1 at 16. And the Horne Declaration, submitted by Plaintiff, acknowledges Horne was "retained by Metropolitan

Development Group to provide . . . advice in connection with obtaining Land Use Approvals for 17.3 acres of undeveloped land . . . as part of Metropolitan's efforts to pursue and obtain the rezoning or other governmental approvals necessary to develop the property as an apartment project . . . as may be required by applicable governmental authorities." ECF No. 24-13 ¶¶ 9, 11–12.

Moreover, Plaintiff's interpretation would render the "and obtain" language superfluous, if all that was necessary was pursuit, and under Maryland law, "courts do not interpret contracts in a manner that would render provisions superfluous or as having no effect." *Towson Univ. v. Conte*, 384 Md. 68, 81, 862 A.2d 941, 948 (2004). For Plaintiff's argument to succeed, the Court would have to disregard the words "and obtain." Such an interpretation would be impermissible as a court cannot "add or delete words to achieve a meaning not otherwise evident from a fair reading of the language used." *Brensdel v. Winchester Constr. Co.*, 392 Md. 601, 623, 898 A.2d 472, 485 (2006).

Further to this point, Plaintiff's argument, that the series-qualifier canon, as discussed in the recent Supreme Court case *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), defeats Defendants' plain reading of Article 3.3(a) is unconvincing. *See* ECF No. 28 at 2–4; ECF No. 30 at 2–4; *Facebook*, 141 S. Ct at 1169 ("[u]nder conventional rules of grammar, '[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series,' a modifier at the end of the list 'normally applies to the entire series[,]'") (citing A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (Scalia & Garner))). The issue here is not whether "use commercially reasonable efforts" modifies the word "obtain."[4] The question

---

[4] In a hypothetical case wherein a party obtained the Land Use Approvals through a method that was not commercially reasonable, the question would be more relevant.

is whether those efforts must result in both the pursuit and the obtaining. And the use of the conjunctive "and" convinces the Court that it does.

The "pursue and obtain" language is both clear and unambiguous in this respect, and it requires no additional construction. *See Aetna,* 293 Md. 409, 420. Therefore, this Court holds that the Agreement at issue here is not ambiguous as to whether Plaintiff had to obtain the Land Use Approvals.[5]

The parties raise additional arguments regarding whether the Land Use Approval was a condition precedent to Defendants' performance. "A condition precedent in a contract is 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.'" *Chevron U.S.A. Inc. v. Apex Oil Co.*, Inc., 113 F. Supp. 3d 807, 821 (D. Md. 2015) (quoting *Chirichella v. Erwin*, 270 Md. 178, 310 A.2d 555, 557 (Md. 1973)). The question of whether language in a contract "constitutes a condition precedent is one of construction dependent on the intent of the parties to be gathered from the words they have employed and, in case of ambiguity, after resort to the other permissible aids to interpretation[.]" *Chirichella*, 270 Md. at 182. While "no particular form of words is necessary in order to create an express condition, such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has expressly been made conditional . . . as have the words 'when,' 'after,' 'as soon as,' or 'subject to[.]'" *Id.* In making this determination, the Court must "examine the language of the contract," *Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*, 165 Md. App. 262, 272, 885 A.2d 381, 387 (2005), and remain mindful that, when

---

[5] Because the Court finds that the Agreement is not ambiguous, the Court need not analyze the Letter of Intent as the parties do, ECF No. 24-1 at 17–18; ECF No. 25 at 13–16. *See C B Structures, Inc. v. Potomac Elec. Power Co.*, 122 F. Supp. 3d 247, 251 (D. Md. 2015) ("When construing an unambiguous contract, 'courts focus on the four corners of the agreement[,] and ascribe to the contract's language its customary, ordinary, and accepted meaning.'" (citing *Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 56 A.3d 631, 670 (Md. Ct. Spec. App. 2012)).

interpreting contracts under Maryland law, the Maryland Court of Appeals has indicated that "[w]e also attempt to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect." *Credible Behav. Health, Inc.*, 466 Md. at 396–97 (quoting *Walker v. Dep't of Human Res.*, 379 Md. 407, 421, 842 A.2d 53, 61 (2004)). To that end, "if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 52, 73 A.3d 224, 233 (2013) (citation omitted).

As such, the Court must review the language throughout the Agreement to discern whether obtaining the Land Use Approvals within the Entitlement Period was a condition precedent. Article 6.2 states the following:

> In addition to all other conditions set forth herein, the obligation of Parcel Owners' LLC to consummate the transactions contemplated hereunder shall be contingent upon the satisfaction of the conditions set forth in sub-paragraphs (a) through (d) of this Section 6.2[.]

ECF No. 1-1 at 10. Plaintiff argues that "it is undisputed that [it] satisfied each of these conditions," ECF No. 24-1 at 17, but Defendants counter that "Article 6.2(a)-(d) are not the exclusive conditions to close," and highlight that the conditions in Article 6.2(a)-(d) are "in addition to all other conditions set forth herein." ECF No. 25 at 26; ECF No. 1-1 at 10. Specifically, Defendants identify that Article 6.2(b) of the Agreement states: "[a]s of the Closing Date, the other party [Plaintiff] shall have performed its obligations hereunder and all deliveries to be made at Closing have been tendered," *id.*, and argues that the "obligation [Plaintiff] had to perform, and the deliverable which [it] was primarily responsible for tendering in order to close" was the Land Use Approvals, ECF No. 25 at 26. In light of the Court's finding

16

that the language in Article 3.3(a) is clear and unambiguous in requiring Plaintiff to use commercially reasonable efforts to *both* pursue and obtain the Land Use Approvals, *see supra*, Defendants are correct.

Further to this point, Article 3.2(a) provides an Entitlement Period of two years, and Article 3.4 provides an extension by two periods of six months each, "[i]f Metropolitan is not successful in obtaining the Land Use Approvals during the Entitlement Period[,]" but it "had applied for and is diligently pursuing" them. ECF No. 1-1 at 5, 6. Giving effect to both clauses, Article 3.4 makes clear that the purpose of the Entitlement Period defined in Article 3.2(a) was to actually obtain the Land Use Approvals because, "[i]f Metropolitan [was] not successful in obtaining the Land Use Approvals during the Entitlement Period" but was working diligently to do so, the Agreement provides the opportunity for Plaintiff to have up to another year to do so. ECF No. 1-1 at 6. Indeed, Plaintiff did precisely this by requesting both allowed extensions, and it was ultimately granted each: first in February and then in May 2020. *See* ECF No. 1-6 at 2 (February 18, 2020 Extension Letter); ECF No. 1-7 at 2 (May 15, 2020 Extension Letter); ECF No. 25-2 ¶ 16; ECF No. 1 ¶¶ 36–38. This would be unnecessary if merely making commercially reasonable efforts were sufficient, even if unsuccessful.

Moreover, as indicated in the January 21, 2020 letter from Plaintiff's duly authorized representative, Carlos Vazquez, which was sent before Plaintiff was granted its first extension of the Entitlement Period on February 18, 2020, Plaintiff proposed a second amendment to the Agreement which would, in Mr. Vazquez's words, "provide additional time to allow us to try to make this happen," specifically an additional eighteen months, in addition to the two options to extend the Entitlement Period by six months under Article 3.4. ECF No. 24-18 ¶ 2 (Vazquez Declaration); ECF No. 24-19 at 2, 4. As Defendants note, Plaintiff would have had no reason to

try to amend the Agreement to extend the entitlement period by an additional eighteen months, on top of the two six-month extensions provided in Article 3.4, unless it knew that actually obtaining the Land Use Approvals during the Entitlement Period was a requirement under the Agreement, *see* ECF No. 25 at 29. Defendants did not agree to the proposed second amendment. *See* ECF No. 25-2 ¶ 15.

After having construed the Agreement as a whole and interpreted its "separate provisions harmoniously" such that "all may be given effect," this Court is satisfied that obtaining the Land Use Approvals was, indeed, a condition of closing. Plaintiff did not obtain the Land Use Approvals within the Entitlement Period, as extended. *See* ECF No. 24-13 ¶ 14; ECF No. 19 ¶ 19; ECF No. 1 ¶ 40. Therefore, Plaintiff failed to satisfy Article 6.2(b), which required Plaintiff to "have performed its obligations hereunder." *See* ECF No. 1-1 at 10.

Plaintiff raises a litany of arguments to resist this conclusion all of which are unconvincing. First, Plaintiff's reliance on *Chirichella*, is misplaced. In *Chirichella*, a case involving a contract to sell a home, the contract language provided that the sale of the Chirichella's home was to "[c]oincide with settlement of New Home in Kettering," and the Chirichellas argued that this language was a condition precedent requiring that they first settle on the home in Kettering before their duty to settle arose, 270 Md. at 182. In rejecting this argument, the Maryland Court of Appeals held that this language was not a condition precedent to close, but rather when reading the contract as a whole, which contained no other reference to a new home, found that it "merely fixe[d] a convenient and appropriate time for settlement." *Id.*

Here, obtaining the acquisition of the Land Use Approvals was a key factor in the overall purpose of the Agreement, which was to develop and construct the property into 120 "market rate, multi-family rental units," *see* ECF No. 25 at 31–32; ECF No. 1-1 at 2, 5, and, as such,

18

*Chirichella* fails to support Plaintiff's argument. *Cox v. Snap, Inc.*, No. 1:16-CV-9, 2016 WL 5109518, at *7 (E.D. Va. Sept. 20, 2016), *aff'd*, 859 F.3d 304 (4th Cir. 2017), also cited by Plaintiff, is likewise unpersuasive. Unlike in *Cox*, where the court found that the agreement in issue did not contain "any prototypical conditional language," this Court has identified such conditional language, with respect to obtaining the Land Use Approvals, in various sections of the Agreement.

For the reasons stated above, this Court finds that the Agreement clearly and unambiguously required Plaintiff to pursue and obtain the Land Use Approvals during the Entitlement Period, which Plaintiff admits that it did not obtain, as a condition precedent to closing under the Agreement and transferring 71% interest to Plaintiff in Cool Spring Road, LLC. "Where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused. An unexcused failure to perform makes it impossible for a breach to occur and, therefore, no remedy for enforcement is available to the delinquent one." *Griffith v. Scheungrab*, 219 Md. 27, 34, 146 A.2d 864, 868 (1958). As such, because Plaintiff failed to satisfy the condition precedent of obtaining the Land Use Approvals within the Entitlement Period, Plaintiff is not entitled to specific performance (Count I) and the Court denies Plaintiff's Motion for Summary Judgment, and grants Defendants' Cross-Motion for Summary Judgment.[6] Moreover, because this Court finds in favor of Defendants on their Cross-Motion for Summary Judgment, Defendants, as the prevailing party, are entitled to "all reasonable attorneys' fees and costs," under Article 10.9 of the Agreement. *See* ECF No. 1-1 at 17 ("[T]he party held in breach hereof agrees to pay all reasonable attorneys' fees and costs

---

[6] This necessarily means that Plaintiff's Motion for Summary Judgment as to Count II (breach of contract) and Count III (preliminary and permanent injunctive relief) are denied as well.

incurred by the prevailing party in litigating the dispute. A party is deemed to have prevailed if it obtains a judgment or settlement in its favor which substantially provides for the relief contemplated either in its complaint or responsive pleading.").

### B. Defendants' Counterclaim for Declaratory Judgment

Defendants' Motion for Summary Judgment on their Counterclaim requests that this Court, pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, make certain declarations as to the parties' rights under the Agreement. ECF No. 27 ¶ 4A–D. "Because the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-2202, is procedural in nature, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937), in a diversity action such as this, federal, not state, law determines whether a district court may properly render a declaratory judgment." *Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 993 (D. Md. 2002).

"Federal courts sitting in diversity may therefore enter declaratory judgments pursuant to § 2201 if three conditions are met: (1) the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment'; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion in exercising jurisdiction." *Al-Sabah v. Agbodjogbe*, No. 17-cv-730-SAG, 2020 WL 1063003, at *3 (D. Md. Mar. 4, 2020) (citing *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004)). The Declaratory Judgment Act, however, does not require courts to issue declaratory relief. Rather, "a district court's decision to entertain a claim for declaratory relief is discretionary." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998) (per curiam). The Fourth Circuit has held that "[a] federal court has the discretion to decline to entertain a declaratory judgment action," but "the court must do so only for 'good reason.'" *Cont'l Cas. Co.*

20

*v. Fuscardo*, 35 F.3d 963, 965 (4th Cir. 1994) (quoting *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). This is because the Declaratory Judgment Act must be "liberally exercised to effectuate the purpose of the statute," *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994), therefore a court should, normally, "entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) 'will serve a useful purpose in clarifying and settling the legal relations in issue,' and (ii) 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Because this Court has already adjudicated the controversy at issue in this case and granted summary judgment in favor of Defendants, *see supra* § III.A, the factors identified by the Fourth Circuit in *Volvo* are satisfied, *see* 386 F.3d at 592. In the instant case, exercising the Court's discretion, indeed, "will serve a useful purpose in clarifying and settling the legal relations in issue," particularly in light of the *lis pendens* that Defendants assert Plaintiff has placed on the Property in issue. *See* ECF No. 27 ¶ 4D; ECF No. 30 at 7 n.3. In Maryland, a *lis pendens* is a common law doctrine,[7] and the attachment of a *lis pendens* to a property "advises a person who seeks to acquire an interest in the relevant property that it will be bound by the outcome of the noticed litigation." *Brault v. Trans Union*, LLC, No. 18-cv-3244-GJH, 2019 WL 2162284, at *4 (D. Md. May 17, 2019). Plaintiff does not allege in the Complaint, or address in its briefing, that it placed a *lis pendens* on the Property. *See generally* ECF No. 1; ECF No. 24-1; ECF No. 28. Because this Court has denied Plaintiff's Motion for Summary Judgment, on the basis that obtaining the Land Use Approvals during the Entitlement Period, which Plaintiff failed

---

[7] Because this action is based on the diversity of the parties, "on questions of substantive law, this court must apply the law that the forum state . . . would apply if it heard the case." *Homeland Training Ctr.., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 290 (4th Cir.2010). Here, Maryland is the form state, therefore the Court looks to Maryland law regarding *lis pendens*.

to do, was a condition precedent under the Agreement for Plaintiff to receive a transfer of 71% interest in Cool Spring Road LLC, and granted Defendants' Cross-Motion for Summary Judgment, this Court has made clear that Plaintiff is not entitled to a transfer of 71% Cool Spring Road LLC, the sole asset of which is the Property. *See supra* § III.A. As such, any *lis pendens* that Plaintiff placed on the property must be terminated. *See e.g., Brault*, 2019 WL 2162284 *4 (holding that "because [p]laintiff's claims shall each be dismissed, the *lis pendens* must be terminated."). For these reasons, and to "afford relief from uncertainty," *Nautilus Ins. Co.*, 15 F.3d at 375, about the parties' rights under the Agreement, the Court will grant Defendants' Motion for Summary Judgment on their Counterclaim in its entirety.

### C.  Local Rule 105.2.c

Plaintiff argues that Defendants' Cross-Motion for Summary Judgment ECF No. 26, and Motion for Summary Judgment on its Counterclaim, ECF No. 27, violates the Court's scheduling order and should be stricken for failure to comply with Local Rule 105.2.c. ECF No. 28 at 13–14. Local Rule 105.2.c. provides:

> In a two-party case, if both parties intend to file summary judgment motions, counsel are to agree among themselves which party is to file the initial motion. After that motion has been filed, the other party shall file a cross-motion accompanied by a single memorandum (both opposing the first party's motion and in support of its own cross-motion), the first party shall then file an opposition/reply, and the second party may then file a reply. If more than two (2) parties intend to file motions in a multi-party case, counsel shall submit a proposed briefing schedule when submitting their status report.

*See* Loc. R. 105.2(c) (D. Md. 2021). Plaintiff contends that during the April 1, 2021 scheduling conference, "Defendants did not suggest that they would file their own motion, let alone seek approval to do so[,]" ECF No. 28 at 13, and that Defendants needed to let Plaintiff know that they wanted to file a cross-motion first, so that, jointly, "the parties could have brought th[e] issue to the Court." *Id.* at 14. Plaintiff is mistaken. Defendants were "not obligated to proactively

seek [Plaintiff's] consent on a proposed briefing schedule before submitting [their] own motion for summary judgment. *See Alston v. Branch Banking & Tr. Co.,* No. 15-cv-3100-GJH, 2017 WL 4124231, at *5 (D. Md. Sept. 15, 2017) (citing *Lupo v. JPMorgan Chase Bank*, *N.A.*, No. 14-cv-475-DKC, 2015 WL 5714641, at *12 (D. Md. Sept. 28, 2015)).

Moreover, when Defendants timely filed their Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 25, they submitted a consolidated memorandum (1) opposing Plaintiff's Motion for Summary Judgment, (2) in support of their Cross-Motion for Summary Judgment on Plaintiff's Complaint, and (3), in support of their Motion for Summary Judgment on their Counterclaim, *see* ECF No. 25 at 6–7, which is in accordance with Local Rule 105.2c. Although Defendants filed separate motions entitled "Defendants/Counter-Plaintiffs' Cross-Motion for Summary Judgment," ECF No. 26, and "Counter-Plaintiffs' Motion for Summary Judgment on their Counterclaim Against Metropolitan Development Group at Cool Spring, LLC," ECF No. 27, the memoranda attached to each is the same consolidated memorandum attached to Defendants' Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 25, which Plaintiff had the opportunity to respond to in its Reply, ECF No. 28. Therefore, these are not "surprise motions" as Plaintiff contends, *see id.* at 14.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 24, is denied, and Defendants/Counter-Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 26, is granted. Defendants/Counter-Plaintiffs' Motion for Summary Judgment on the Counterclaim, ECF No. 27, is also granted. A separate Order shall issue.

Date: <u>March 30, 2022</u>                                          <u>     /s/                                        </u>
                                                                                    GEORGE J. HAZEL
                                                                                    United States District Judge